Case No. 15-7143 Manu Kennedy Appellant v. Murial Bowser and her official capacity of Mayor of Washington, District of Columbia, et al. Mr. Seymour and Ms. Leary for Appellant Manu Kennedy and Ms. Anderson for the Appellees. Mr. Seymour, let's let everybody get out of the courtroom first. All right. Good morning. Thank you, Your Honor. May it please the Court, my name is Richard Seymour on behalf of Manu Kennedy. I've reserved two minutes for rebuttal. We have a divided argument by permission of the Court, and I'll be addressing the question of the Court's jurisdiction. Under Section 1292B, we believe that there was substantial compliance with the requirement of filing a petition because the plaintiff's application to the District Court for certification under 1292B was well discussed by the District Court and approved by the District Court, and that arrived in this Court within the 10-day period of time for filing a petition for permission to appeal. Was there anything in the papers that were filed that asked for our permission? No, Your Honor, there was not. And what is this application called under the rules? It's called a petition. For? Permission to appeal. For permission. That's right, Your Honor. So that's missing from this. That's correct. Okay. How do you get around that? Because the – and we've said before, Your Honor, comparable cases involving similar legal requirements for seeking permission from a court of appeals. Can you find any outside the Ninth Circuit? With all due respect to our colleagues. It is 20% of the country, Your Honor. How about the other 80%? And it has two divisions, for whatever that is worth. But the question of the Supreme Court held in the Tories – Let me ask my question. Are there any circuit courts other than the Ninth Circuit that have adopted your theory? Well, there's the Piney Woods unpublished decision from the Fifth Circuit. That's a little different from this case because one of the parties, a different party, the opposing party, had petitioned for permission to appeal. And the court held that the notice of appeal would be treated as a cross-petition for permission to appeal. But there was a petition for leave to appeal. From the opposing side. That's right, Your Honor. There was a petition that asked for the permission. And isn't the issue, do we see – are we able to make sense of it when it comes to us? Or do we have to do a lot of hard work to figure out that this is a request for permission? I mean, the clerk's office here treated it as it was a normal appeal, right? It didn't know that it was a – that you thought it was a permission to appeal until the actual application for permission to appeal came in. Let me ask you this. So the opponent gets a chance to respond to a request for permission to appeal, right? That's right, Your Honor. So under your argument, that time ran, right? The time for the opponent to respond ran because the clock was – started ticking within the 10 days when the notice of appeal was applied. Well, if Your Honor is suggesting there might have been a lack of due process, the District of Columbia couldn't have filed a motion to dismiss the appeal for lack of jurisdiction. And the same issues would then have been raised. But there also is – No, no, no. My question is, so if your theory is that when the notice of appeal and the district court decision attached to it shows up in the clerk's office, you say that that's compliant with that, that's an application for permission to appeal, right? And that was done within the 10-day period, right? So it's timely under your theory. That is substantial compliance because late before this court – But my question is, how much time then does the district have to respond? When does the clock run for their response? Because that's one of the purposes of the application for permission is to give notice to the other side. Under your theory, when did the clock start running on their reply? Your Honor, I think that their reply was set forth in the brief just as it was in us. The time period – and I accept Your Honor's point that there was no point at which the district could know that it's time to start running – has started to run in order to oppose a petition for permission to appeal. Then that sort of undercuts your argument that this is a functional equivalent because one of the functions of the application for permission to appeal is to give notice to your adversary. And you're saying they had no way of knowing that here. They certainly knew that we were here before this court on a petition for permission to appeal. They could have found – they could have filed an opposition at any point, and as Your Honor points out, we could not have objected that such an opposition would be untimely. They filed their opposition in their brief in this case, and we're not saying that that is an untimely opposition to what we think was substantial compliance. Before we go further on this, there's an alternative route that is available to the court because the case comes up in an unusual posture, Your Honor. The district court made clear that it was not going to reconsider this. As far as it was concerned, this was a final matter. It also said that there was going to be the potential for serious disruption if this matter were not resolved as it was. That's the equivalent of a Rule 54B determination that there's no just cause for delay in the appeal. The District of Columbia urged the district court – If we disagreed with you, why couldn't the district court just recertify the question and let's start all over again? It could, Your Honor. That's what they did in the Fifth Circuit, right? Yes, Your Honor. That was done in the Oquan case. Indeed, this court could do it before it hands down a decision on this matter so that the same panel has jurisdiction that conserves judicial resources. But the alternative approach is the district had suggested Rule 54B govern the motion, not Rule 59E. The district court agreed that Rule 54B govern the motion. That was in connection with its ability to reconsider anything at any time before a judgment is issued on the merits. But this court, in a case called In re Tolson – Let me just get this. Tolson v. United States, which is 732 F. 2nd 998 at 1002-1003, a 1984 case. The court held that a 1292B certification could be considered a Rule 54B certification, and that was relatively easy to do, much easier than the reverse would be to do. And in that event, the filing of the notice of appeal would have perfected a Rule 54B notice, and you have the equivalent. The unusual feature of this case is that the district has not, shall I say, it has not strongly defended the decision on the merits below, that the ADAAA does not apply. And my colleague, Ms. Leary, will argue that. Did you say it hasn't strongly defended it? It has not strongly defended it. It hasn't even argued it or briefed it. That's right, Your Honor. And footnote 2 of its brief suggests that it might even proceed. So why is it that – I'll ask your colleague – why is that a confession of error? Well, we're before the court in the unusual posture where there may not be much of a dispute about the merits of the case. The question is just how we get here. Well, if we get to it. If we get here. And if we're not here, then they don't need to have argued it, do they? That's right, Your Honor. And we're concerned about conserving judicial resources and making sure that the matter comes before the same panel. Do you really want this problem in the U.S.?  Do you really want this problem in the U.S.? Not that they want it. We like this panel, Your Honor. You need to wrap up so you can give your colleague some time. Thank you, Your Honor. Ms. Leary? May it please the Court. Shana Leary for Petitioner. I will be addressing three issues, none of which the district contested on appeal. First, I will address why the 2009 denial of Mr. Kennedy's request for accommodation and related subsequent incidents are discrete acts of discrimination. Second, I will address the concern about retroactive application of the amendments to earlier incidents. And third and finally, I will address the concern that Mr. Kennedy's claims represent an attempt to circumvent the statute of limitations of the ADA. This appeal addresses the issue of whether the 2008 amendments to the Americans with Disabilities Act govern the 2009 denial of Mr. Kennedy's request for accommodation and subsequent related acts. Appellant requested this Court vacate the lower court's ruling that the 2008 amendments do not apply and remand it for further processing. Mr. Kennedy was a firefighter and later a fire inspector for the District of Columbia's Fire and Emergency Medical Services from 2002 through 2013. Mr. Kennedy also suffered from a condition known as pseudofolliculitis barbae, also referred to as PFB, which is a skin condition that affects predominantly African American men. It can result in both infection, permanent scarring, inflammation, and ingrown hairs, pasturals, and a variety of different infections. I'm just curious, how would the fire department accommodate that if they need to have... Your Honor, the only truly effective treatment for PFB is that an individual maintain a small amount of facial hair. In this instance, Mr. Kennedy... But the fire department's got the point that he's got to be able to wear the gear and can't do so with the growth. So, Your Honor, it's actually... Mr. Kennedy pled facts that it is not correct that he cannot do so. The district was allowing, by exemption from a court order, individuals who invoked a religious exemption to maintain full beards. And Mr. Kennedy was actually working with several firefighters who were maintaining full beards. And Mr. Kennedy was not asking to not have to take the fit test. He wanted to take the fit test to make sure the mask sealed just like anyone else. And if he could not safely wear it, then there were alternative masks that he could wear to ensure that there was a proper fit. But the district had allowed others to maintain facial hair and go out with masks after taking the fit test. Despite this policy and despite the fact that Mr. Kennedy requested accommodations in 2008, 2009, and later dates, and despite the individuals being permitted to wear full beards, the district denied Mr. Kennedy's request for accommodation. Each of those requests for accommodation and the denials, even although there was one in 2008 and then again a denial in 2009, are discrete acts of discrimination. The Supreme Court held that in National Railroad Passenger Corporation v. Morgan, that each discrete discriminatory act starts the clock anew. And the existence of related past acts does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory. The question then becomes whether or not the incident was its own intentionally discriminatory act, or whether or not it was the inevitable but delayed consequence of an earlier discriminatory act. And the court explained in Ledbetter v. Goodyear Tire that where an employer engaged in a series of intentionally discriminatory acts, a violation takes place when each act is committed. Here the denial of Mr. Kennedy's 2009 request for accommodation was a discrete act. It was certainly not the delayed but inevitable consequence of his 2009 denial, given that the scope of the law had changed so greatly such that the response to the 2009 denial could have been a different response than the response in the 2008 request for accommodation. This court has recognized that such a change in circumstances surrounding the denial of a subsequent request for accommodation can give rise to a discrete act. In Barrett v. Covington-Berling, this court held that a claim based on the denial of a new request made in light of changed circumstances would not be time-barred. Likewise, in Giola v. D.C., this court stated that when an employee whose employer has denied his initial request for disability accommodation makes a subsequent request for a new accommodation, the denial of that new request can give rise to a fresh act of discrimination. Although those cases dealt with a change in medical condition, they are comparable to here because the focus is on whether or not the denial of the new request could give rise to a different response that has a different intent behind it. In this instance, it was the change in the scope of the definition of disability, and that scope was changed with the intent that more individuals would be protected by the law. As such, the district's response to Mr. Kennedy's request could have been a different response in 2009, and as such, that makes it a discrete act. Other courts have reached the same conclusion that Mr. Kennedy asks you to reach today. A district court in Connecticut considered whether or not medical students' repeated requests for accommodations beginning before 2009 but continuing into 2009 were governed by the amendments, and the court held that the amendments governed all denials of accommodation occurring in 2009 or later, but not earlier than that. Likewise, a district court in Ohio held that because the amendments were not retroactive, they did not apply to denials of accommodation requests occurring prior to 2009, but they did apply to denials of accommodation requests in 2009 or later. Concerning the issue of retroactivity, this should not be a problem here because Mr. Kennedy is not asking that this court apply the 2008 amendments to any events that occurred prior to their effective date. He is simply asking that this court treat the 2009 denials as discrete acts and apply the governing law of the time accordingly. Likewise, the lower court raised a concern that Mr. Kennedy was attempting to circumvent the statute of limitations of the ADA or that it might open the door for others to do so. However, because a denial of accommodation is a discrete act and it is not a continuing violation, allowing Mr. Kennedy to govern the claims under the 2008 amendments would not allow others to bootstrap in otherwise untimely claims because, again, if a claim for a denial in 2008 is not timely filed, you can't bring it in just because you bring in a claim for a discrete act of discrimination in 2009. As the denial of Mr. Kennedy's 2009 request for accommodation and subsequent related incidents were discrete acts of discrimination to which the 2008 amendments apply, appellate respectfully requests that this court reverse the lower court's decision and remand for further processing. All right. Thank you. Thank you. Ms. Anderson? As the shortest attorney appearing before Your Honors today, I'm going to lower this a little bit. Good morning. May it please the Court. Stacey Anderson on behalf of the District Police. Your Honors, we would ask that the Court dismiss this case for lack of jurisdiction. 28 U.S.C. Section 1292B contains two prerequisites to an appeal in this court. First, the district must certify that there's a controlling question of law over which there's a substantial grounds for disagreement and which will materially advance the termination of the litigation. The second requirement, which is wholly absent in this case, is an application permission to appeal in this court. Appellants have argued that they've presented the functional equivalent of an application through the district court's actions of transferring the notice of appeal and district court decision to this court. If we were in the Ninth Circuit, though, this would be sufficient. Don't you agree? Don't you read their cases that way? I don't believe that the amalgamated decision from the Ninth Circuit, I think, turned on concerns of due process there. In that case, the Court was interpreting a statute that was really countertextual to what the time frames were indicated in the statute and out of an abundance of caution allowed the appeal to go forward in that case. Appellants have cited two other cases in Ray Turner out of the Seventh Circuit and then Casey out of the Second Circuit. And in both of those instances, something was actually filed in the Court of Appeals. In Turner, the underlying application from the district court came to the Court of Appeals along with the entire record. We don't have that here. And then in the Casey case, the appellants actually filed a brief with the Court within the 10-day time frame in which they made their case for jurisdiction. And again, we have nothing like that here. We just simply have the district court transferring the notice of appeal. So I have been able to find no authority that would support the proposition that that simple act of the district court transferring the notice of appeal and the district court's decision suffices for the application requirement. So in light of that, it is the district's position that the court should dismiss this appeal for lack of jurisdiction. If there's no questions. All right. Thank you. Does Mr. Seymour have any time? Mr. Seymour does not have any time. All right. Why don't you take two minutes if you need them. We'll wait a moment. All right. Well, we're going to clear the court room now. Thank you.
judges: Henderson, Griffith, Sentelle